# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
DAVID DELRE, Individually and On :
Behalf of All Others Similarly :    Civil Action No. 05-03706
Situated, :
                                :      Hon. Jose L. Linares
                                :
            Plaintiff, :
                                :
                                :
            v. : **Motion Date: September 12, 2005**
                                :    **Oral Argument Requested**
THE GILLETTE COMPANY, :
                                :
                                :
           Defendant. :
_____ :

---

## DEFENDANT THE GILLETTE COMPANY'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND THIS ACTION

---

                                                    DILLON, BITAR & LUTHER, L.L.C.
                                                    53 Maple Avenue
                                                    P.O. Box 398
                                                    Morristown, New Jersey 07963-0398
                                                    (973) 539-3100

                                                    Attorneys for Defendant
                                                    The Gillette Company

Of Counsel and On the Brief
     Robert E. Bartkus

Also On the Brief
     Paul M. Campano
     Lauren H. Lezak

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..............................................1

STATEMENT OF THE CASE..............................................2

ARGUMENT..........................................................7

POINT I -- GILLETTE'S REMOVAL WAS TIMELY..........................7

    A.  Gillette Timely Removed the Present Action Because It
        Filed Its Notice of Removal Within 30 Days of the
        Supreme Court's Decision in *Exxon*. ......................8

POINT II -- STANDARD FOR DETERMINING AMOUNT IN CONTROVERSY.....13

POINT III -- BECAUSE THE COMPLAINT ASSERTS A CLAIM FOR
UNJUST ENRICHMENT AND SEEKS DISGORGEMENT AS A REMEDY, THE
AMOUNT IN CONTROVERSY REQUIREMENT FOR DIVERSITY JURISDICTION
IS SATISFIED HERE................................................15

    A.  The Face of the Complaint Seeks Disgorgement in Excess
        of $75,000. ..............................................15

    B.  Finding that Plaintiff's Claim for Disgorgement
        Satisfies the Amount in Controversy Requirement Does
        Not Run Afoul of *Snyder's* Non-Aggregation Rule. .........16

POINT IV -- THE AMOUNT IN CONTROVERSY REQUIREMENT IS
SATISFIED BECAUSE THE VALUE OF THE INJUNCTIVE RELIEF
SOUGHT BY PLAINTIFF, AS MEASURED BY THE COST TO GILLETTE,
EXCEEDS $75,000.................................................23

    A.  The "amount in controversy" stemming from Plaintiff's
        request for injunctive relief exceeds $75,000. ..........23

    B.  The "amount in controversy" stemming from Plaintiff's
        request for injunctive relief should be evaluated from
        Gillette's perspective. .................................25

POINT V -- PLAINTIFF'S ARGUMENT THAT PERMITTING REMOVAL TO
FEDERAL COURT HERE WOULD DEFEAT THE LIMITS TO DIVERSITY
JURISDICTION AND BRING CLAIMS INTO FEDERAL COURT THAT WOULD
NOT OTHERWISE BE THERE IS UNAVAILING...........................29

POINT VI -- IN THE ALTERNATIVE, THE COURT SHOULD RESERVE
ANY DECISION ON THIS REMAND MOTION PENDING A DETERMINATION
BY THE MDL PANEL ON TRANSFERING AND CONSOLIDATING THIS ACTION
WITH THE OTHER ACTIONS RAISING SIMILAR CLAIMS...................31

CONCLUSION....................................................35

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*In re Abbott Laboratories*, 51 F.3d 524
(5th Cir. 1995)........................................9

*Aetna U.S. Healthcare, Inc. v. Hoechst*, 48 F. Supp.
2d 37 (D.D.C. 1999)..................................20

*In re Air Crash Disaster in Florida Everglades on
Dec. 29, 1972*, 368 F. Supp. 812 (J.P.M.L. 1973)......34

*American National Red Cross v. S.G.*, 505 U.S. 247
(1992).........................................10, 12

*Angus v. Shiley, Inc.*, 989 F.2d 142 (3d Cir. 1993) .....13

*Board of Trustees of the Teachers' Retirement System
of the State of Ill. v. Worldcom, Inc.*, 244 F.
Supp. 2d 900 (N.D. Ill. 2002).......................34

*Becker v. Sherwin Williams*, 717 F. Supp. 288 (D.N.J.
1989)...............................................14

*In re Brand Name Prescription Drugs Antitrust
Litigation*, 123 F.3d 599 (7th Cir. 1997).............28

*Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S.
691 (2003)...........................................5

*In re Bridgestone/Firestone Inc., Tires Products
Liability Litigation*, 256 F. Supp. 2d 884 (S.D.
Ind. 2003)..........................................28

*Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th
Cir. 1994)..........................................13

*In re Cardizem CD Antitrust Litigation*, 90 F. Supp.
2d 819 (E.D. Mich. 1999)........................17, 20

*In re Corestates Trust Fee Litigation*, 39 F.3d 61 ,
(3d Cir. 1994)......................................19

*Davis v. Time Insurance Co.*, 698 F. Supp. 1317 (S.D. Miss. 1988)..........................................13

*In re Diet Drugs Products Liability Litigation*, 1999 WL 673066 (E.D. Pa. Aug. 26, 1999)...................25

*D's Pet Supplies, Inc. v. Microsoft Corp.*, 2000 U.S. Dist. LEXIS 16482 (E.D. Mich. Feb. 7, 2000).........32

*Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993)..........................................10, 11

*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. __, 125 S. Ct. 2611 (2005).................1, 4, 9

*In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, 196 F. Supp. 2d 1373 (J.P.M.L. 2002).......................34

*In re Federal Electric Campaign Act Litigation*, 511 F. Supp. 821 (J.P.M.L. 1979).........................34

*In re Ford Motor Co. Crown Victoria Police Interceptor Prod. Liability Litigation*, 229 F. Supp. 2d 1377 (J.P.M.L. 2002).......................34

*Free v. Abbott Laboratories*, 529 U.S. 333 (2000)........9

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001)..................................................8

*Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421 (D.N.J 2003)...................................31, 34

*Holcombe v. Smithkline Beecham Corp.*, 272 F. Supp. 2d 792 (E.D. Wis. 2003)...........................29

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)....................13

*Jackson v. America Bankers Insurance Co. of Fla.*, 976 F. Supp. 1450 (S.D. Ala. 1997)..................13

*Jackson v. Johnson & Johnson, Inc.*, 2001 WL 34048067 (W.D. Tenn. April 3, 2001)..................32

*Lee v. Ford Motor Co.*, No. 02-2957, 2002 U.S. Dist.
   LEXIS 23418 (E.D. La. Dec. 3, 2002)..................32

*Medical Society of the State of New York v. Conn.
   General Corp.*, 187 F. Supp. 2d 89 (S.D.N.Y. 2001)...31

*Meritcare, Inc. v. St. Paul Mercury Insurance Co.*,
   166 F.3d 214 (3d Cir. 1999)...........................9

*Michael v. Warner-Lambert Co.*, 2003 U.S. Dist. LEXIS
   21525.............................................32, 33

*In re Microsoft Corp. Antitrust Litigation*,
   127 F. Supp. 2d 702 (D. Md. 2001)...........21, 26, 28

*New Jersey Welfare Rights Organization v. Cahill*,
   483 F.2d 723 (3d Cir. 1973)....................19, 20

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir.
   2004), *cert. denied*, 125 S.Ct. 2990 (2005)...........8

*Packard v. Provident National Bank*, 994 F.2d 1039
   (3d Cir. 1993)..................................17, 25

*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358 (C.D.
   Cal. 1997).........................................31

*Rosmer v. Pfizer Inc.*, 263 F.3d 110 (4th Cir. 2001).....8

*Smith v. Adams*, 130 U.S. 167 (1889)...............13, 16

*Snow v. Ford Motor Co.*, 561 F.2d 787,, Pl. Brief at
   15.................................................22

*Snyder v. Harris*, 394 U.S. 332, Pl. Brief at 9.....17, 19

*Stromberg Metal Works, Inc. v Press Mechanical,
   Inc.*, 77 F.3d 928 (7th Cir. 1996)....................9

*Tench v. Jackson National Life Insurance*, 1999 WL.
   1044923 (N.D. Ill. Nov. 10, 1999)..................31

*Weinke v. Microsoft Corp.*, 84 F. Supp. 2d 989 (E.D.
   Wis. 2000),........................................32

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir.
 2002) .........................................14, 16

*In re Western States Wholesale Natural Gas Antitrust
 Litigation*, 290 F. Supp. 2d 1376 (J.P.M.L. 2003).....34

*Zahn v. International Paper Co.*, 414 U.S. 291 (1973) .4, 8

## STATE CASES

*County of Essex v. First Union National Bank*, 373
 N.J. Super. 543 (App. Div. 2004).................18, 19

*Warren v. Century Bankcorporation, Inc.*, 741 P.2d
 846 (Okl. 1987).......................................19

*Woodside Homes, Inc. v. Town of Morristown*, 26 N.J.
 529 (1958) ...........................................17

## STATUTES

28 U.S.C. § 1332(a) ................................5, 30,
                                                    33

28 U.S.C. § 1367 ...................................1, 4,
                                                    8, 9

28 U.S.C. § 1407 .......................................6

28 U.S.C. § 1446(b) ................................2, 8,
                                                 9, 10,
                                                 12, 13

## PRELIMINARY STATEMENT

This matter is not simply a dispute over a "$15.00 razor." Rather, Plaintiff David Delre ("Plaintiff" or "Delre") brings this action seeking not only damages for each putative class member, but also the disgorgement of "all profits earned" by The Gillette Company ("Gillette") on its sales of the M3Power razor and an injunction with respect to Gillette's national advertising.  Complaint ("Compl.") at 13.

Prior to the United States Supreme Court's recent June 23 decision in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. __, 125 S. Ct. 2611 (2005), settled Third Circuit law foreclosed any removal of this action on grounds of diversity absent a showing that the $75,000 amount in controversy could be satisfied separately as to each member of the class.  *Exxon*, however, eliminated that jurisdictional bar in this Circuit by holding that, under 28 U.S.C. § 1367, the $75,000 amount in controversy requirement need be satisfied as to one plaintiff only.  Delre's equitable claim for disgorgement of profits (which according to the Complaint exceeds $75,000), and his request for injunctive relief (also with a value in excess of $75,000), each independently suffices to satisfy this test. Gillette respectfully submits that applicable law no longer forecloses federal jurisdiction in cases such as this one and

that, under the second paragraph of 28 U.S.C. § 1446(b), Gillette's removal of the case was proper and timely.

In the alternative, as also discussed below, Gillette submits that the Court should reserve ruling on the motion. At present, 20-plus other similar cases are pending here and in other courts around the country that, along with this case, are subject to a motion before the Judicial Panel on Multidistrict Litigation ("MDL motion") to transfer and consolidate these actions into a single district court. At least one of these other cases in another court involves objections to jurisdiction based on diversity; as a result, in the event the transfer is granted, which is expected, allowing jurisdictional objections to be considered and resolved by a single court would promote judicial economy.

## STATEMENT OF THE CASE

A.   <u>The Parties</u>

1.   <u>Plaintiff</u>

Plaintiff David Delre is alleged to be a resident of Bergen County who purchased an M3Power razor in Bergen County. *See* Compl. ¶¶ 2, 5. Plaintiff is a citizen of New Jersey.

2.   Defendant

Defendant Gillette is a Delaware corporation with its principal place of business in Boston, Massachusetts.  *See* Compl. ¶ 3.  Defendant is not a citizen of New Jersey.

B.   The Claims of the Complaint

Plaintiff purports to bring the Complaint as the representative of a putative *national* class of consumers who purchased Gillette's M3Power razor.  The Complaint alleges three claims for relief: Count I alleges that Plaintiff and the class suffered an "ascertainable loss" pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, by reason of Gillette's advertising for the M3 Power razor; Count II alleges that Plaintiff and members of the putative class were "fraudulently induced" to purchase their M3Power razors; and Count III asserts a claim for Unjust Enrichment.

In connection with Count I, Plaintiff seeks treble damages; he also seeks statutory attorneys fees and requests punitive damages.  In connection with Count II, Plaintiff seeks compensatory and punitive damages arising out of the fraud claim.  In connection with Count III, Plaintiff seeks "[d]isgorgement of all profits earned by [Gillette] in connection with the sale of the M3Power razor system."  Compl. at 13.  Among his prayers for relief, Plaintiff also seeks "[i]njunctive relief enjoining [Gillette] from making

affirmative misrepresentations and omitting material information in connection with the advertisement and sale of the M3Power razor system." *Id.*

Though Delre in this motion argues that the amounts in controversy arising from the foregoing claims for relief may be measured only after apportionment *pro rata* amongst all members of the putative class, he does not contest that the full, unapportioned amounts in controversy arising from the claims for disgorgement and injunctive relief exceeds $75,000.

C.   Proceedings to Date

The Complaint was filed in the Superior Court of New Jersey, Bergen County, on February 10, 2005, eight days before the President signed into law the Class Action Fairness Act of 2005 ("CAFA") (expanding federal jurisdiction over class actions).  The Summons and Complaint were received by mail at Gillette's Boston headquarters on or about March 3, 2005.

On June 23, 2005, the United States Supreme Court issued its decision in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, *supra*, which held that, under 28 U.S.C. § 1367, the jurisdictional minimum amount in controversy for diversity jurisdiction in class actions need be satisfied as to one plaintiff only.  *Exxon* overruled inconsistent Circuit law — including law in the Third Circuit — that had continued to follow the contrary rule in *Zahn v. International Paper Co.*, 414

U.S. 291 (1973).  Defendant Gillette filed a Notice of Removal on July 22, 2005, and promptly filed it in the Superior Court and served it on Plaintiff's attorneys.

By motion dated August 4, 2005, Plaintiff moved to remand this action to the Superior Court of New Jersey, Bergen County. The motion is returnable September 12, 2005. In the motion, Plaintiff contests whether the amount in controversy, apportioned *pro rata* among class members, is sufficient to satisfy 28 U.S.C. § 1332(a), as well as the timeliness of the removal.  He does not contest that the full amounts in controversy arising from each of the equitable claims for relief exceeds $75,000, but only that the amounts fall short of the jurisdictional minimum if distributed *pro rata* amongst members of the putative class.  The motion thus requires no fact-finding by the Court[1] but instead a determination solely on questions of law.

     D.   <u>Related Actions</u>

A companion case, *Vereb v. The Gillette Company*, Civil Action No. 05-03673, was filed in Bergen County by the same attorneys on February 14, 2005.  The *Vereb* Complaint is identical to the instant Complaint except that it refers to Mr. Vereb (an Essex County resident) as plaintiff instead of Mr.

---

[1] The discussion in Plaintiff's Brief at pages 9-14 regarding burdens of proof is, therefore, irrelevant. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003).

Delre.  Gillette similarly removed that action following *Exxon*.
A parallel motion to remand has been filed in *Vereb*.

Also pending before the Court is a related case, *Coleman v.
The Gillette Company*, Civil Action No. 05-3153, filed on June
20, 2005. The *Coleman* complaint specifically alleges federal
jurisdiction under CAFA.  The plaintiff in *Coleman* purports to
represent a putative class of consumers of 17 states (including
New Jersey) and the District of Columbia (*i.e.*, narrower in
scope than the national class claimed in each of *Vereb* and
*Delre*) and alleges that the amount in controversy "exceeds
$5,000,000." Coleman complaint ¶¶ 7,8.

These three actions have been listed as potential "tag-
along" actions for transfer and consolidation with more than 20
other consumer class actions raising similar claims against
Gillette filed in various courts around the country relating to
Gillette's advertising for the M3Power razor.  The motion to
transfer and consolidate pursuant to 28 U.S.C. § 1407 is pending
before the Judicial Panel on Multidistrict Litigation under the
caption *In re M3Power Razor System Marketing and Sales Practices
Litigation* (MDL 1704), and is set for hearing by the MDL Panel
on September 29, 2005.

E.   Status of the Pleadings

Pursuant to the Order of The Hon. Jonathan Harris dated July 8, 2005 (filed with the Notice of Removal), Gillette's time to respond to the Complaint was extended to August 15, 2005.  By Consent Order dated August 18, 2005, the Court extended Gillette's time to respond to the Complaint until 30 days after the MDL Panel issues its order regarding the MDL motion, or 20 days after the ruling on the remand motion, if granted.  The same orders were entered in *Vereb.*  To date, Gillette has not been required to respond to any of the complaints in any of the actions subject to the MDL transfer motion.[2]

## ARGUMENT

POINT I
GILLETTE'S REMOVAL WAS TIMELY.

Plaintiff presents no specific argument challenging the premise that the Supreme Court's decision in *Exxon* opened a 30-day period for removal by Gillette.  Nor does Plaintiff dispute that Gillette filed its Notice of Removal within that 30-day

---

[2] In *Coleman,* for example, the parties stipulated to an extension until 30 days after the ruling on the MDL transfer motion. Several other of the cases subject to the MDL transfer motion have been formally stayed pending the MDL decision, by stipulation or by order of the court (both *sua sponte* and upon contested motion).  In still other cases, plaintiffs have agreed to sequential 30-day extensions.  Gillette anticipates that the MDL motion (filed by one of the Massachusetts plaintiffs) likely will be granted (only one of the plaintiffs filed any opposition to the motion) and that the transferee court will then set a coordinated schedule for the orderly handling of these matters.

window.  Instead, Plaintiff argues merely that removal did not occur at the outset of the action and is barred on amount in controversy grounds; in other words, Plaintiff's supposed "untimeliness" argument amounts to a recapitulation of arguments on other points and fails even to acknowledge the effect of *Exxon* (and its overruling of Third Circuit precedent) under 28 U.S.C. § 1446(b).  For the reasons set forth below, Gillette's removal of this action was timely because it filed its Notice of Removal within 30 days of the Supreme Court's decision in *Exxon*.

> A.  <u>Gillette Timely Removed the Present Action Because It Filed Its Notice of Removal Within 30 Days of the Supreme Court's Decision in *Exxon*.</u>

Prior to the Supreme Court's decision in *Exxon*, settled Third Circuit precedent strictly enforced the rule set out in *Zahn v. International Paper Co.*, 414 U.S. 291 (1973), requiring, for diversity jurisdiction to exist, that each plaintiff individually satisfy the requisite minimum amount in controversy (currently $75,000).  *See* 414 U.S. at 301.  Following *Zahn*, Congress enacted the federal supplemental jurisdiction statute, 28 U.S.C. § 1367.  In various other circuits, the enactment of 28 U.S.C. § 1367 was treated as superceding *Zahn* by removing the need for each plaintiff to meet the jurisdictional test.  *See Olden v. LaFarge Corp.*, 383 F.3d 495, 503 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 2990 (2005); *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 114 (4th Cir. 2001); *Gibson v. Chrysler Corp.*, 261 F.3d 927,

934 (9th Cir. 2001); *Stromberg Metal Works, Inc. v Press Mech., Inc.*, 77 F.3d 928, 930 (7th Cir. 1996); *In re Abbott Labs.*, 51 F.3d 524, 529 (5th Cir. 1995), *aff'd by an equally divided court*, *Free v. Abbott Labs.*, 529 U.S. 333 (2000). The Third Circuit, in contrast, specifically rejected that construction of 28 U.S.C. § 1367, insisting instead that the requirements of *Zahn* continue to be met. *Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir. 1999). In *Exxon*, the Supreme Court held that the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, had in fact superceded *Zahn* and allowed federal courts to exercise supplemental jurisdiction over the claims of plaintiffs who did not satisfy the jurisdictional minimum, provided that at least one plaintiff in the action did satisfy the requisite amount in controversy. *Exxon*, 125 S.Ct. at 2615.

The Third Circuit's continued adherence to *Zahn* notwithstanding the enactment of 28 U.S.C. § 1367 meant that this action was not removable at the time it was filed and served. The Supreme Court's issuance of its decision in *Exxon*, however, changed that.

The second paragraph of 28 U.S.C. § 1446(b) provides:

> If the case stated by the initial pleading
> is not removable, a notice of removal may be
> filed within thirty days after receipt by
> the defendant, through service or otherwise,
> of a copy of an amended pleading, motion,

> order or other paper from which it may first
> be ascertained that the case is one which is
> or has become removable, except that a case
> may not be removed on the basis of
> jurisdiction conferred by section 1332 of
> this title more than 1 year after
> commencement of the action.

28 U.S.C. § 1446(b).  All of the requirements for removal under

the second paragraph of section 1446(b) are present here.  As

discussed above, this action was not removable in this Circuit

at the time it was filed and served.  Moreover, Gillette removed

the present action within one year of the commencement of the

action and within 30 days of the decision in *Exxon*, which, here,

constitutes an "order or other paper from which it may first be

ascertained that the case is one which is or has become

removable."

In *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993)

("*Doe*"), the Third Circuit concluded that a decision by the

Supreme Court in another case could constitute an "order"

capable of triggering removal under the second paragraph of

section 1446(b).  In particular, the Third Circuit construed the

effect on removability flowing from a decision by the Supreme

Court in a separate case, *American National Red Cross v. S.G.*,

505 U.S. 247 (1992) ("*S.G.*"), which resolved a split in the

circuits (in favor of federal jurisdiction) as to whether the

American Red Cross's federal charter conferred original

jurisdiction on the federal courts and authorized the American

Red Cross to remove other cases that it was defending. Given the facts of *Doe*, the Third Circuit, as it expressly acknowledged, did not need to "construe the entire expression 'order or other paper,'" and similarly left open the question "whether a 'decision' in another case, not involving the same party but with similar facts and legal issues, constitutes 'other paper.'" *Doe*, 14 F.3d at 202.

The rationale in *Doe* supports the timeliness of removal here. Again, the Court here need not construe the full parameters of the expression "order or other paper" to recognize that the Supreme Court's decision in *Exxon* falls within the scope of that phrase given that the factors supporting the Third Circuit's decision in *Doe* are analogous to those raised here:

- First, here, as in *Doe*, a decision by the Supreme Court (not a trial or intermediate appellate court) interpreting a statute concerning the scope of the federal courts' jurisdiction gives rise to the removability of the action.

- Second, the Supreme Court decisions at issue, *S.G.* and *Exxon*, both resolved a conflict among the circuits as to the scope and interpretation of the federal statute, in favor of federal jurisdiction, thereby removing a bar in this Circuit.

- Third, both here and in *Doe*, the cases became subject to removal not because of some factual change within the case itself – for example, new allegations by the plaintiff.  Rather, it was an exogenous change in the law rendered by the Supreme Court that eliminated what was otherwise the only impediment to removal, *i.e.*, controlling Third Circuit and lower court precedents that adopted what turned out to be an incorrect interpretation of the scope of federal jurisdiction.

- Finally, Gillette, as was the American Red Cross,[3] is named as a defendant in multiple actions around the country (more than 20 at this time) alleging similar claims and that are directed at the same advertising for the M3Power razor.  *See* Docket Entry No. 2.

Even if the decision in *Exxon* were not treated as an "order" of the particular type issued in *S.G.* and discussed in *Doe*, the "other paper" prong of 28 U.S.C. § 1446(b) is nonetheless satisfied because removal here closely parallels the circumstances in *Doe*, which explicitly decided not to determine the standards of "other paper."  Accordingly, Gillette's removal

---

[3] *S.G.*, 505 U.S. at 250.

within 30 days of the decision in *Exxon* sufficed to meet the terms of 28 U.S.C. § 1446(b).[4]

<u>POINT II</u>
<u>STANDARD FOR DETERMINING AMOUNT IN CONTROVERSY</u>.

The jurisdictional amount in controversy is measured by the "litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)). It is not determined by "the low end of an open-ended claim," but by "a reasonable reading of the rights being litigated." *Angus v. Shiley, Inc.,* 989 F.2d 142, 145-46 (3d Cir. 1993); *see also Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977). Moreover, the Supreme Court has long held that "the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed where such is the case, but . . . by *the pecuniary result to one of the parties immediately from the judgment*." *Smith v. Adams*, 130 U.S. 167, 175 (1889) (emphasis

---

[4] *See also Davis v. Time Ins. Co.*, 698 F. Supp. 1317, 1322 (D. Miss. 1988) ("[T]his Court perceives no difference between a situation where an amended complaint adds a new federal question and one where a recent United States Supreme Court decision invigorates a pleading with federal character. In both instances, a federal basis is supplied where previously none was."). *Davis* involved a Supreme Court decision holding that ERISA preempted state law with respect to welfare benefit plans.

added); *Becker v. Sherwin Williams*, 717 F. Supp. 288, 295 (D.N.J. 1989).

It is well established that compensatory damages, punitive damages and attorney's fees must be included in the amount in controversy. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002). Plaintiff devotes a considerable portion of his brief to arguing that the value of such relief must nonetheless be apportioned *pro rata* to each member of the putative class for purposes of determining the amount in controversy, and that only the apportioned amounts can be considered in determining whether the amount in controversy requirement is satisfied as to any plaintiff. *See* Plaintiff's Brief at 9 ("Pl. Brief"). Although courts that had anticipated *Exxon* had not consistently required *pro rata* apportionment of punitive damages and attorneys fees, Gillette acknowledges that current case law in the Third Circuit supports *pro rata* apportionment of those forms of relief.

The same result does *not* follow as to the disgorgement order or the form of injunctive relief Plaintiff requests herein. Because Plaintiff does not contest (and the allegations of his complaint reflect) that the total value of the disgorgement and injunctive relief he seeks exceeds $75,000, no fact-finding is at issue.[5] As such, Delre's discussion of who

---

[5] Gillette does not concede the validity of any of the claims for relief asserted by the Complaint and reserves all rights and

carries the burden on this motion misses the point because the dispositive questions here are legal, not factual.

POINT III

BECAUSE THE COMPLAINT ASSERTS A CLAIM FOR
UNJUST ENRICHMENT AND SEEKS DISGORGEMENT AS A REMEDY,
THE AMOUNT IN CONTROVERSY REQUIREMENT FOR
DIVERSITY JURISDICTION IS SATISFIED HERE.

Plaintiff cannot avoid the consequences of having asserted a claim for unjust enrichment (Count III) against Gillette, namely, that federal diversity jurisdiction exists over the Complaint. By requesting "disgorgement of all profits earned by [Gillette] in connection with the sale of the M3Power razor system," Compl. at 13, Plaintiff ensured that the amount in controversy requirement is satisfied here.

A.   The Face of the Complaint Seeks Disgorgement in Excess of $75,000.

Nowhere in Plaintiff's remand motion does he dispute that the disgorgement order that he seeks would exceed $75,000. Nor could he, given his own allegations. The Complaint describes the M3Power razor as Gillette's "newest and highest-priced razor system," Compl. ¶ 1, alleges that each razor sells at a retail price of approximately $15.00, *id.* ¶ 33, and purports to assert the claims of a putative national class of consumers which, according to the Complaint, includes at least "thousands, and probably tens of thousands of purchasers of M3Power razor

defenses as to each and every count of the Complaint and any claim for relief asserted therein.

systems." *Id*. ¶ 10.  Moreover, the Complaint specifically alleges that Gillette "[i]n its most recent fiscal quarter, . . . reported income of $475 million, up from $416 million, as more consumers traded up to its M3Power razor system." *Id*. ¶ 3.  As Plaintiff reminds the Court, such allegations — *i.e.*, that Gillette's income increased by $59 million in connection with consumers purchasing the M3 Power razor over other razors — must be assumed to be true for purposes of deciding the motion to remand (even though fact finding at trial may determine otherwise).  Pl. Brief at 4; *Smith*, 130 U.S. at 175.  ("the money judgment prayed" can suffice to establish the "pecuniary value of the matter in dispute").

Given Plaintiff's express request for a "[d]isgorgement of all profits earned by [Gillette] in connection with the sale of the M3Power system," Compl. at 13, his allegations thus establish on the face of the Complaint that the amount of disgorgement he seeks exceeds $75,000.

    B.   <u>Finding that Plaintiff's Claim for Disgorgement Satisfies the Amount in Controversy Requirement Does Not Run Afoul of *Snyder's* Non-Aggregation Rule.</u>

Plaintiff does not disagree that disgorgement, as expressly recognized by the Third Circuit, is properly considered in determining the amount in controversy.  *See, e.g.*, *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002).  Plaintiff's principal argument as to disgorgement, rather, is his half-

hearted contention that Gillette's disgorgement argument
constitutes a "backdoor route to aggregating the individual
claims of class members." Pl. Brief at 15. The lynchpin of his
argument is his loose characterization of disgorgement as just
another form of "unliquidated damages" that must therefore be
"allocated to all members of the Class on a pro rata basis"
pursuant to *Snyder v. Harris*, 394 U.S. 332, 338 (1969). Pl.
Brief at 9, 14. The argument is without merit because
disgorgement under New Jersey law is a form of relief
qualitatively different from those on which Plaintiff bases his
arguments.

Specifically, in assessing whether Plaintiff's claim for
unjust enrichment and his concomitant request for disgorgement
satisfy the amount in controversy requirement for diversity
jurisdiction, the Court first must look to applicable state law.
*See Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1046 (3d
Cir. 1993) (considering whether remedies were available in order
to satisfy jurisdictional requirement); *see also In re Cardizem
CD Antitrust Litig.*, 90 F. Supp. 2d 819, 825 (E.D. Mich. 1999)
(looking to underlying state law which allowed separate cause of
action for unjust enrichment). Plaintiff agrees that, under New
Jersey law, a claim for unjust enrichment is equitable in
nature. Pl. Brief at 14; *see Woodside Homes, Inc. v. Town of
Morristown*, 26 N.J. 529, 536 (1958).

What Plaintiff fails to acknowledge, however, is that, under New Jersey law, "[d]isgorgement . . . has nothing to do with damages . . . ." *County of Essex v. First Union Nat'l Bank*, 373 N.J. Super. 543, 556 (App. Div. 2004), *certif. granted*, 183 N.J. 218 (2005).  Unlike damages, which are intended to make a plaintiff whole, the remedy of disgorgement is intended to prevent unjust enrichment and to deter similar wrongful conduct by others.  *Id.* at 550 (observing that disgorgement is intended "to deny the wrongdoer any profit from the transaction and to thereby deter such conduct").  Disgorgement is necessarily determined from the perspective of the defendant.  *Id.* at 553. New Jersey cases have thus refused to recognize that disgorgement constitutes a piecemeal, *pro rata* or per person remedy, and instead have required full disgorgement, holding that "only full disgorgement satisfies the principle of preventing unjust enrichment, and the remedy, though harsh, advances the goal of deterring others."  *Id.* at 552.  In New Jersey, disgorgement accordingly has no relation to the number of plaintiffs or set of plaintiffs before the court, or to the individual damage claims they may or may not have, aggregated or not.  *See id*. at 549, 558 (noting absence of damages).

Under clear state law precedent in New Jersey, thus, the profits to be disgorged are a unitary sum.[6] *County of Essex*, 373 N.J. Super. at 553 ("Disgorgement is said to occur when a 'defendant is made to 'cough up' what he got, neither more nor less.'" (quoting *Warren v. Century Bankcorporation*, Inc., 741 P.2d 846, 852 (Okl. 1987)).  Plaintiff's claim for disgorgement, and that of each of the members of the putative national class of consumers that he purports to represent, are for this reason not "separate and distinct" from each other; as *County of Essex* confirms, the remedy is not a per person one and does not depend on the number of members in the plaintiff class or, indeed, whether it is a class action.  Far from violating *Snyder v. Harris*, Delre's demand for disgorgement of profits instead falls squarely within the parameters of the exception to the non-aggregation rule that *Snyder* sets forth. *See Snyder*, 394 U.S. at 335  (recognizing exception for "cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest"); *see also New Jersey Welfare Rights Org. v. Cahill*, 483 F.2d 723 (3d Cir. 1973)

---

[6] Plaintiff's reference to *In re Corestates Trust Fee Litigation*, 39 F.3d 61 (3d Cir. 1994), Pl. Brief at 14, therefore is unavailing.  In *In re Corestates*, the Third Circuit discussed the issue of when claims arising in equity place the entire value of the res in dispute. Defendants in *Corestates* argued that claims against a trustee placed the entire value of the trust in dispute, but the Third Circuit held that the litigation in fact did not place the entire estate in issue.  *Id.* at 66. Here, the entire *res*, the profits, are placed in dispute.

(relying on *Snyder* to set forth three-part test for assessing whether aggregation is proper).[7]

In any event, other courts that have directly addressed this issue in the context of a class action have similarly held that disgorgement, if permitted under applicable state law, can indeed satisfy the amount in controversy requirement. For example, in *In re Cardizem CD Antitrust Litigation*, 90 F. Supp. 2d 819 (E.D. Mich. 1999), the Court held in the context of that putative class action that the amount in controversy requirement was satisfied because "the claim asserted is an integrated one and the 'disgorgement remedy would inure to the benefit of the class rather than vindicate any alleged violations of individual rights.'" *Id.* at 825-26 (quoting *Aetna U.S. Healthcare, Inc. v. Hoechst*, 48 F. Supp. 2d 37, 41 (D.D.C. 1999) (*Aetna* examined a similar disgorgement case and reached the same holding as *Cardizem*)). Plaintiff's allegations of disgorgement against Gillette likewise "do[] not depend, rely upon, or arise out of

---

[7] In *Cahill,* the Third Circuit held that "aggregation" may be proper where (1) the defendant has no interest in how proceeds are distributed, (2) no plaintiff could obtain the relief without affecting the ability of others to do so, and (3) the rights asserted are common to the class rather than individual. 483 F.2d at 725 n. 2.  Plaintiff's claim for disgorgement satisfies each of those factors.  Indeed, the other cases in text that recognize that disgorgement claims are not subject to apportionment apply an analysis similar to the one in *Cahill.* The same analysis applies to Plaintiff's claim for injunctive relief, discussed below, with respect to Gillette's national advertising.

the vindication of individual rights of the putative class members." *Id.* at 826.  Rather, the remedy is directed at Gillette's gain – an objective amount – and arises, if at all, from the alleged inequity in allowing Gillette to retain its allegedly ill-gotten gain.

Similarly, in *In re Microsoft Corp. Antitrust Litigation*, 127 F. Supp. 2d 702, 720-21 (D. Md. 2001), the court affirmed the removal of cases asserting disgorgement claims, reasoning that one or more plaintiffs could seek disgorgement of profits under the applicable substantive (state) law, even though that award may constitute a windfall.  According to the court in *Microsoft*, the decisions of those courts not permitting disgorgement to serve as the basis for determining the "matter in controversy" turned on how a claim for disgorgement was treated under state law.  *Id.*  As discussed above, under New Jersey law, as in *Microsoft*, disgorgement is distinct from "damages" and has no relation to the loss suffered by any individual plaintiff.

Plaintiff cites no decision by the Third Circuit holding that disgorgement of profits may not form the basis of the "matter in controversy" attributed to the named plaintiff in a putative class action.  *See* Pl. Brief at 13-14.  Though he

analogizes disgorgement to attorneys fees and punitive damages,[8]
disgorgement under New Jersey law is a remedy qualitatively
different from consequential damages or other tort or contract
remedies.[9]  As in *Microsoft*, the removal here should be upheld
because under state law the disgorgement remedy is the same
regardless of the number of members of the putative national
class Plaintiff purports to represent, and cannot be equated to

---

[8] The reasons cited by those courts holding that punitive damages
or attorneys fees are subject to apportionment *pro rata*, whether
or not surviving *Exxon*, are distinct from disgorgement.  The
value of compensatory or punitive damages in such cases, for
example, is not fixed and does not have an objective value; the
final award depends heavily on the trier of fact.  Moreover, as
Plaintiff points out in his Brief, due process requires that
punitive damage awards bear a reasonable relation to
compensatory damages.  *See* Pl. Brief at 11.  Often, the larger
the number of plaintiffs asserting claims, the greater the
potential punitive damage award.

Attorney's fees, similarly, are not a definite sum fixed at
the outset of a case.  The amount of such fees depends on the
duration and outcome of the action as well as the number of
plaintiffs involved.  Further, attorney's fees are commonly
awarded on a percentage-of-recovery basis.  Even if calculated
on a lodestar (hourly) basis, the task of representing many
plaintiffs can require more work than representing an individual
plaintiff.  The more plaintiffs involved, often the greater the
attorney's fees will be.

The same logic does not apply to Plaintiff's demands for
disgorgement, the value of which does not increase incrementally
with the addition of more plaintiffs.

[9] Plaintiff's reference to *Snow v. Ford Motor Co.*, 561 F.2d 787,
790 (9th Cir. 1977), Pl. Brief at 15, also is unavailing; the
case does not refer to disgorgement, and its reference to
finding a "backdoor" around *Zahn* and *Snyder* is irrelevant where,
as here, Gillette has shown that in New Jersey the full amount
of the proposed disgorgement remedy provides the measure of the
"matter in controversy."

the aggregation of individual plaintiffs' claims for personal damages.

<u>POINT IV</u>

THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED BECAUSE THE VALUE OF THE INJUNCTIVE RELIEF SOUGHT BY PLAINTIFF, AS <u>MEASURED BY THE COST TO GILLETTE, EXCEEDS $75,000</u>.

Federal diversity jurisdiction similarly arises as a result of Plaintiff's claim for injunctive relief with respect to Gillette's advertising for the M3 Power razor, given that, on the face of the Complaint, the "pecuniary result" of any order requiring changes in Gillette's advertising can reasonably be expected to exceed $75,000, and Plaintiff's Remand Motion does not contend otherwise.

A.   <u>The "amount in controversy" stemming from Plaintiff's request for injunctive relief exceeds $75,000.</u>

Just as with respect to disgorgement, nowhere in Plaintiff's remand motion does he dispute that the injunctive relief that he seeks would impose costs on Gillette exceeding $75,000. According to the allegations in the Complaint, Gillette has aggressively marketed and advertised the M3Power razor. Delre avers that the allegedly false statements concerning the capabilities of the M3Power razor have appeared in various media outlets, including a website dedicated to the M3Power razor, retail packaging for the M3Power razor, print advertisements, and television spots, including one featuring NASCAR race car drivers, that allegedly "saturated the

airwaves." Compl. ¶¶ 34, 40-42. Indeed, Plaintiff makes a point of underscoring the resources that Gillette has allegedly dedicated to the promotion and marketing of the M3Power razor and its predecessors. For example, the Complaint cites an April 14, 1998 press release that purportedly indicated that Gillette would spend more than $300 million worldwide to market the Mach3 razor. The Complaint further alleges that in the same press release, Gillette stated that it would "'spend approximately $200 million for advertising worldwide in marketing year one.'" *Id.* ¶ 26. The Complaint goes on to allege that "[t]his focus on aggressive advertisement has been utilized in the product launch of the M3Power line of razors." *Id.* ¶ 28.

It is in the context of such allegations that Plaintiff seeks, among other things, "[i]njunctive relief enjoining Gillette from making affirmative misrepresentations and omitting material information in connection with the advertisement and sale of the M3Power razor system." Compl. at 13. Based on the allegations in the Complaint, it is plain -- and Plaintiff does not dispute -- that the amount in controversy stemming from any injunctive order requiring a change in the content of Gillette's advertising for the M3Power razor can reasonably be expected to exceed $75,000.

B.   The "amount in controversy" stemming from Plaintiff's request for injunctive relief should be evaluated from Gillette's perspective.

As with disgorgement, Plaintiff's principal argument as to the value of the injunction he seeks is that it is analogous to "unliquidated damages" and that such sums must therefore be "allocated to all members of the Class on a *pro rata* basis." Pl. Brief at 14.  Plaintiff's argument fails because the analogy is in this case unavailing.

In assessing whether the injunctive relief sought satisfies the amount in controversy requirement, the Third Circuit generally assesses the potential value of injunctive relief from the perspective of the plaintiff, not by the cost to the defendant.  *See Packard*, 994 F.2d at 1050.  District court decisions in this Circuit and elsewhere, however, have recognized and held that a mechanical application of such an approach in many cases makes little sense, and that the only meaningful way to determine the value of the injunction in such cases is to look at the cost to the defendant.

For example, in *In re Diet Drugs Products Liability Litigation*, 1999 WL 673066, at *7 (E.D. Pa. Aug. 26, 1999), the court was confronted with the issue of valuing the plaintiffs' request for equitable relief in the form of the defendant instituting a medical monitoring program.  The court, acknowledging that the Third Circuit generally looks to the

"viewpoint of the plaintiff" when placing a value on injunctive relief, nevertheless held that the value of the equitable relief sought by the plaintiffs should be measured by the cost to the defendant of implementing such a remedy.  There, as should be the case here, the district court recognized that to benefit any single member of the putative class, the *full extent* of the equitable remedy must be implemented.  Accordingly, the court observed that "there is no question of dividing the cost by the number of plaintiffs in the putative class to determine the value to each plaintiff, because ... the full amount of the research, rather than some fraction of it, must be funded to benefit any single member of the contemplated class." *Id.* (quoting *Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 364-65 (S.D.N.Y. 1998)).  In other words, the costs of the injunction to the defendant are unitary and wholly independent of whether there are many or only one plaintiff.

Similarly, in *In re Microsoft Corp. Antitrust Litigation*, 127 F. Supp. 2d 702, 719 (D. Md. 2001), the court observed that "common sense compels the conclusion that 'the value of the object' of the requested injunctive relief in these cases, which could not be effected without the expenditure of millions of dollars if granted even to one plaintiff, exceeds $75,000."  The same reasoning applies here, given that the benefits and value flowing from the requested injunction would inure primarily (if

not entirely) to future purchases of the M3Power razor, and not members of the putative class who supposedly already purchased their M3Power razors in reliance on Gillette's representations concerning its capabilities.

Looking to the potential value of the injunction from the perspective of the defendant is, moreover, particularly appropriate in the post-*Exxon* era.  The Third Circuit's continued adherence to *Zahn* (requiring $75,000 in controversy for each member of the class) meant that the issue of whose perspective to use for evaluating injunctive relief rarely made any difference because meeting the high minimum threshold for each plaintiff still could not be met.  Now, given that the $75,000 jurisdictional minimum need be met only by one plaintiff, this issue becomes, in the Third Circuit, much more meaningful. Under *Exxon*, for purposes of diversity jurisdiction at least, the number of plaintiffs is irrelevant as is the value of the claims of each plaintiff.  As a result, where, as here, the cost of the injunction to the defendant does not depend on the number of the plaintiffs, the value of the injunction can and should be considered in its entirety without an artificial *pro rata* apportionment.

Indeed, courts in at least two circuits that previously anticipated and adopted the rule set out in *Exxon* before *Exxon* itself was decided also determined that the proper test in such

circumstances is to view the value of injunctions from the
perspective of the defendant. *See, e.g.*, *In re Brand Name
Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir.
1997) (for the purposes of determining the amount in controversy
in a putative class action where the relief sought includes an
injunction, "[t]he test . . . is the cost to each defendant of
an injunction running in favor of one plaintiff"); *In re
Bridgestone/ Firestone Inc., Tires Products Liab. Litig.*, 256 F.
Supp. 2d 884, 895 (S.D. Ind. 2003) (holding that if the cost of
any injunction "is not apportionable or divisible, that is, if
the cost will not increase incrementally if the injunction runs
in favor of additional plaintiffs, then the Court can view that
total cost as the amount put in controversy by the request for
injunctive relief"); *In re Microsoft Corp.*, 127 F. Supp. 2d at
719 (holding that the full cost of the requested injunctive
relief should be attributed to the named plaintiff for amount-
in-controversy purposes).

From Gillette's perspective, the cost of complying with
Delre's requested injunctive relief, if ordered, would be the
same whether Plaintiff brought this action individually or, as
he has, as the purported representative of a putative national
class. As a result, the value of the injunction – as measured
by the greater-than-$75,000 cost to Gillette – should be
attributed entirely to Plaintiff for purposes of determining

whether the amount in controversy requirement is satisfied here.
*See Holcombe v. SmithKline Beecham Corp.*, 272 F. Supp. 2d 792,
798 (E.D. Wis. 2003) (holding that the amount in controversy
requirement was satisfied where the putative class' request to
enjoin defendant's advertising campaign would require defendant
to "pull its advertising at least on a regional basis and to
redesign and implement new advertisements" and that "the cost of
these tasks would exceed $75,000 and would do so whether the
injunction ran in favor of one plaintiff or of the entire
proposed class").

<u>POINT V</u>
<u>PLAINTIFF'S ARGUMENT THAT PERMITTING REMOVAL TO FEDERAL
COURT HERE WOULD DEFEAT THE LIMITS TO DIVERSITY
JURISDICTION AND BRING CLAIMS INTO FEDERAL COURT THAT WOULD
NOT OTHERWISE BE THERE IS UNAVAILING.</u>

In a final effort to persuade the Court that removal should
not be permitted here, Plaintiff makes the argument that denying
remand would permit large numbers of claims suddenly to be
brought in federal court that would not otherwise be there.  The
spectre that Plaintiff seeks to raise is a false one.

At the threshold, the claims in this case that Plaintiff
argues should not be permitted into federal court are already
here.  As noted above, more than 20 cases asserting the same
types of claims against Gillette as the ones Delre asserts in
his Complaint are already pending in federal court (including
*Coleman*) under CAFA, and are soon due to be considered for

transfer and consolidation before a single federal court by the Judicial Panel on Multidistrict Litigation.  Indeed, going forward, permitting removal on diversity grounds in this case will likely result in *no* net increase in other national class action complaints like Plaintiff's coming into federal court, since now, any such cases will likely be independently removable under CAFA.

More importantly, even under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), Congress specifically permits into federal court any cases where the "matter in controversy" exceeds $75,000.  The bottom line is that by choosing to include claims for "disgorgement of all profits" and injunctive relief as to Gillette's national advertising in the Complaint, Plaintiff crossed that border.

To the extent that prudential considerations play any role at all, the fact that more than 20 similar actions are also pending in federal court and are likely to be transferred – with this one, absent a remand – to a single federal court for coordinated, uniform handling of proceedings and rulings makes it clear that removal in this case furthers judicial economy.

POINT VI

IN THE ALTERNATIVE, THE COURT SHOULD RESERVE ANY DECISION
ON THIS REMAND MOTION PENDING A DETERMINATION BY THE MDL
PANEL ON TRANSFERING AND CONSOLIDATING THIS ACTION WITH THE
OTHER ACTIONS RAISING SIMILAR CLAIMS.

Finally, and in the alternative, this Court should decline
to rule on Delre's motion and reserve its decision on this
motion pending a decision by the MDL Panel on a transfer
(scheduled for hearing on September 29, 2005).  In *Hertz Corp.
v. The Gator Corp.*, 250 F. Supp. 2d 421, 424 (D.N.J 2003), for
example, the Court deferred ruling on a pending preliminary
injunction motion and instead issued a stay of that action
pending a decision by the MDL Panel on transfer of the case,
noting that it is within the Court's inherent power to issue a
stay notwithstanding the pending motion.  *Accord Rivers v. Walt
Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (discussing
JPML rules and noting that "[w]hether or not to grant a stay is
within the court's discretion and it is appropriate when it
serves the interests of judicial economy and efficiency").

Indeed, numerous courts have done so even where the pending
motion is a motion to remand.  *E.g., Tench v. Jackson Nat'l Life
Ins.,* 1999 WL 1044923 at *2 (N.D. Ill. Nov. 10, 1999) (declining
to rule on remand motion involving dispute regarding whether
amount in controversy satisfied jurisdictional minimum, and
issuing stay pending transfer determination by MDL Panel);
*Medical Soc'y of the State of New York v. Conn. Gen. Corp.*, 187

F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (same).[10]  In fact, one court
stated, "The general rule is for federal courts to defer ruling
on pending motions to remand in MDL litigation until after the
JPDML [Judicial Panel on Multidistrict Litigation] has
transferred to the MDL panel." *Michael v. Warner-Lambert Co.*,
2003 U.S. Dist LEXIS 21525, at *8 (S.D. Cal. Nov. 2003 (quoting
*Jackson v. Johnson & Johnson, Inc.,* 2001 WL 34048067, at *6
(W.D. Tenn. April 3, 2001)).

     Declining to rule on Plaintiff's remand motion would serve
both the interests of judicial economy and consistency.  At
least one other similar action against Gillette has recently
been filed in state court that Gillette has in turn removed to
federal court on grounds of diversity.  *Adoure v. The Gillette
Company*, Civil Action No. 05-6212 SJO (C.D. Cal.)(filed in Los
Angeles County Superior Court on August 19, 2005; removed to the
United States District Court for the Central District of
California on August 24, 2005).  Gillette has filed a notice
with the MDL Panel adding *Adoure* to the list of potential "tag-
along" actions that should be made subject to the MDL transfer

---

[10] *See also Lee v. Ford Motor Co.*, No. 02-2957, 2002 U.S. Dist.
LEXIS 23418, at *4 (E.D. La. Dec. 3, 2002); *Weinke v. Microsoft
Corp.*, 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000); *D's Pet
Supplies, Inc. v. Microsoft Corp.*, Nos. 99-76056, 99-76086, 99-
76202, 00-70481, 2000 U.S. Dist. LEXIS 16482, at *4 (E.D. Mich.
Feb. 7, 2000).

motion.[11]   Plaintiff Adoure has given notice that he intends to seek a remand.  Gillette, at the same time, has given notice to plaintiff Adoure that it intends to request a stay pending determination on the MDL transfer.  Gillette thus faces at least one other action subject to the MDL transfer motion where objections to jurisdiction under 28 U.S.C. § 1332(a) will be pending.

If this Court reserves ruling on this motion and the transfer is granted, the transferee court will address the remand issue.  Upon transfer, the transferee court will familiarize itself with the facts and issues common to these cases, which will promote efficient and consistent resolution of jurisdictional as well as other pretrial issues.  On the other hand, if this Court addresses the remand issue, denies remand, and transfer is thereafter granted, this Court will have wasted its resources.  *See Michael, supra,* 2003 U.S. Dist LEXIS 21525, at *8 ("If this Court rules against the Motion to Remand, and the cases are ultimately transferred to the MDL court, it would have needlessly expended its energies familiarizing itself with the intricacies of [this case].").  Moreover, ensuring consistency in rulings and proceedings favors awaiting the

---

[11] Although the claims in *Adoure* are asserted by a plaintiff proceeding in an individual capacity and not as a putative representative of a class, the allegations and claims are similar to those herein and in the other actions subject to the MDL Motion.

transfer decision.  *See, e.g., Bd. of Tr. of the Teacher's Ret. Sys. of the State of Ill. v. Worldcom, Inc.,* 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002); *Hertz,* 250 F. Supp. 2d at 427.[12]

---

[12] There is also a significant amount of case law in which the MDL Panel has repeatedly urged that remand issues be heard by transferee courts to promote consistency and judicial efficiency.  *See, e.g., In re Western States Wholesale Natural Gas Antitrust Litig.,* 290 F. Supp. 2d 1376, 1378 (J.P.M.L. 2003) (holding that transfer was proper despite pendency of remand motions because such motions could be presented to and decided by the transferee judge and noting that "[s]uch an approach . . . has the additional advantage of streamlining treatment of the remand issue."); *In re Ford Motor Co. Crown Victoria Police Interceptor Prod. Liab. Litig.,* 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (rejecting plaintiffs' argument to delay transfer to allow transferor courts to rule on pending motions to remand because transferee court could decide remand motions and centralization under Section 1407 would prevent inconsistent or repetitive pretrial rulings); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.,* 196 F. Supp. 2d 1373, 1375 (J.P.M.L. 2002) (same);  *In re Federal Elec. Campaign Act Litig.,* 511 F. Supp. 821, 824 (J.P.M.L. 1979) ("Transfer under Section 1407 at the present time will permit a single judge to consider [remand] motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster in Florida Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) (refusing to delay transfer decision to permit transferor court to rule on plaintiffs' remand motions because the transferee court had power to consider issue of remand and consolidation would eliminate possibility of conflicting pre-trial rulings).

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant The Gillette Company respectfully requests that Plaintiff's Motion to Remand be denied.  In the alternative, this Court should reserve decision on this motion pending a ruling by the MDL Panel on the motion to transfer and consolidate the action with the other pending related cases.

Dated:  August 29, 2005

                    Respectfully submitted,


                    DILLON, BITAR & LUTHER, L.L.C.



                    By:_____s/_____
                         Robert E. Bartkus

                    Attorneys for Defendant
                    The Gillette Company